**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| |
|---|
| John Hilaire,<br><br>                Plaintiff,<br><br>v.<br><br>Nationstar Mortgage LLC, *doing business as Rightpath Servicing, Rushmore Servicing, and Mr. Cooper*,<br><br>                Defendant. |

Civil No. 3:26-cv-00015-VAB

April 2, 2026

## RULING ON MOTION AND REPORT AND RECOMMENDATION ON INITIAL REVIEW

Plaintiff John Hilaire, representing himself, filed this case against Defendant Nationstar Mortgage LLC, asserting five counts alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and state law. ECF No. 12 at 5-14.

This case was referred to me pursuant to 28 U.S.C. § 636(b)(1)(A) for Initial Review of the Complaint, along with the Motion for Leave to Proceed *In Forma Pauperis* pursuant to 28 U.S.C. § 1915(a). ECF No. 14. When a plaintiff requests leave to proceed *in forma pauperis*, or "IFP," the relevant statute directs the court to conduct two inquiries. First, the court examines the plaintiff's financial affidavit and determines whether the plaintiff is truly unable to pay the fee. 28 U.S.C. § 1915(a). Second, to ensure the plaintiff is not abusing the privilege of filing without prepaying the fee, the court reviews the complaint and dismisses the case if it determines "the action . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

For the reasons that follow, I **GRANT** Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*. Additionally, I **RECOMMEND** that all of Plaintiff's claims against Defendant, with the exception of Count Four, proceed to service of process.

### I.        Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*

Plaintiff asks the Court's permission to proceed *in forma pauperis*, without prepaying the $405 filing fee, under 28 U.S.C. § 1915 ("Section 1915"). ECF No. 13. When a plaintiff asks to proceed *in forma pauperis*, the Court must review his financial affidavit and determine whether he is truly unable to "pay or give security for the [filing fee] and still be able to provide himself . . . with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (citing 28 U.S.C. § 1915(a)).

In his motion, Plaintiff indicates that he is not currently receiving employment income, and that he received his most recent "non-employee compensation" on January 27, 2026, in the amount of $650.00. ECF No. 13 at 3, 7. Plaintiff represents that another individual, Nerland Calixte, lives in his home and contributes $520.00 per month. *Id.* at 3. Plaintiff asserts, however, that such assistance is irregular. *Id.* at 8. Plaintiff also alleges that he has $9.00 in cash on hand, as well as $130.00 in an investment account. *Id.* at 4. Plaintiff asserts that his monthly expenses are $1,575.00. *Id.* at 5.

While the Court acknowledges that Plaintiff receives financial assistance from another individual and has received income from an unidentified form of self-employment, Plaintiff alleges that such assistance and income is not obtained on a consistent basis. Accordingly, Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* is **GRANTED**.

**II.     Review of the Complaint Under 28 U.S.C. § 1915(e)(2)(B)**

A. <u>Legal Standard</u>

Pursuant to § 1915(e), courts must review *in forma pauperis* complaints and dismiss any complaint that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is "frivolous" under the law when, among other things, it "has no arguable basis in law or fact" or "is based on an indisputably meritless legal theory." *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Monroe v. New Neighborhoods, Inc.*, No. 3:23-CV-835 (VAB), 2024 WL 4416585, at *1 (D. Conn. Oct. 4, 2024) (internal quotation marks omitted). To evaluate the sufficiency of a complaint, courts "must accept as true all of the allegations contained in the complaint [except] legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

These rules are interpreted liberally for *pro se* plaintiffs such as Mr. Hilaire. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, we must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. Of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000). "It is well established that the submissions of a *pro se* litigant must be . . . interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.

2006)). However, they "may not fill the gaps in a *pro se* plaintiff's complaint by imagining facts that are not alleged." *Mugabo v. Wagner*, No. 22-CV-930-A, 2024 WL 1621534, at *2 (W.D.N.Y. Apr. 15, 2024) (internal quotation marks omitted).

Courts typically dismiss *pro se* complaints that do not satisfy this standard of review without prejudice, meaning that the plaintiff may file an amendment that addresses the court's concerns and satisfies Section 1915's requirements. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, that is not always the case. The U.S. Court of Appeals for the Second Circuit directs this Court to dismiss *pro se* complaints with prejudice, or without otherwise granting leave to amend, when the "[C]ourt can rule out any possibility, however unlikely it might be," that "an amendment will result in a claim being successfully pleaded." *Id.*

B.  The Complaint

Plaintiff alleges that on or around November 20, 2023, he received written notice from Defendant Nationstar (operating as RightPath Servicing) that the servicing rights for Plaintiff's residential mortgage were transferred. ECF No. 12 at 3. Plaintiff also alleges that shortly thereafter, he mailed a written answer notifying Defendant of a pre-existing billing dispute, and that any servicing or collection activity was required to comply with applicable federal law. *Id.* Plaintiff asserts that his correspondence notifying Defendant of this dispute was delivered on December 4, 2023. *Id.* Three days after the delivery of Plaintiff's response, on December 7, 2023, Defendant allegedly issued a written acknowledgement of receipt of the "dispute and notice of error." *Id.*

Plaintiff asserts that despite this acknowledgement, Defendant failed to respond substantively, as required by 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35. *Id.* Moreover, Plaintiff alleges that Defendant "continued servicing and collection activity, including the issuance of billing statements and other adverse servicing actions," and "furnished negative and derogatory

information regarding Plaintiff's mortgage account to consumer reporting companies, including information reflecting delinquency, and foreclosure proceedings," while the underlying dispute remained unresolved. *Id.* at 4.  Plaintiff states that he timely appeared for the foreclosure proceedings and notified Defendant and the Court of the outstanding dispute, but such dispute remained unresolved. *Id.* at 4-5. Plaintiff alleges suffering damages including "credit harm, loss of credit opportunities, [and] time and expense incurred in addressing Defendant's misconduct." *Id.* at 5.

## C. Discussion

### i.    *Statute of Limitations*

As a preliminary matter, the Court notes that Plaintiff's claims are subject to several statutes of limitations. *See* 12 U.S.C. § 2614 (providing that RESPA claims under 12 U.S.C. § 2605 are subject to a three year statute of limitation); 15 U.S.C. § 1692k(d) (providing that a claimant must file an action pursuant to the FDCPA within one year of the violation); 15 U.S.C. § 1681p (under the FCRA, plaintiffs must file their action "not later than the earlier of-- (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs"); Conn. Gen. Stat. § 52-584 (negligence claims in Connecticut are subject to two year statute of limitations); Conn. Gen. Stat. § 42-110g(f) (CUTPA is governed by three year statute of limitations).

As was stated, *supra*, Plaintiff alleges that on December 7, 2023, Defendant received and acknowledged Plaintiff's written notice that a dispute regarding Plaintiff's mortgage payment remained unresolved. ECF No. 12 at 8. Plaintiff also avers that, despite such notice and acknowledgment, Defendant subsequently "communicated credit information regarding Plaintiff's mortgage loan to one or more consumer reporting companies, including information reflecting

delinquency, default, or other adverse status." *Id.* Additionally, Plaintiff attached to his original Complaint evidence of a foreclosure proceeding that was commenced on May 6, 2024, as well as "Evidence of Defendant's Furnishing of Adverse Credit Information to Consumer Reporting Agencies," which is dated November 30, 2025.[1] ECF No. 1 at 17, 30, 32-33.

Although Plaintiff has included the aforementioned dates in his Complaint, it is not entirely clear when the alleged violations that form the basis of his claims actually occurred and, therefore, I recommend that the Court construe Plaintiff's Complaint liberally at this preliminary stage. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses."). Accordingly, I do not recommend dismissal of Plaintiff's claims on this ground.

   ii.      *Plaintiff's Claim Pursuant to RESPA*

In Count One, Plaintiff alleges that Defendant violated RESPA. ECF No. 12 at 5-7. RESPA requires loan servicers to investigate and make corrections to borrowers' accounts within 30 days of the borrower's written request. 12 U.S.C. § 2605(e)(2)(A). Additionally, RESPA prohibits loan servicers from "fail[ing] to take timely action to respond to a borrower's requests to correct errors." 12 U.S.C. § 2605(k)(1)(C). "To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may

---

[1] Plaintiff's original Complaint included several attached exhibits which were not included in the Amended Complaint, including Plaintiff's letter to Defendant informing it of the underlying dispute. ECF Nos. 1, 12. While it is well settled that an amended complaint supersedes a prior complaint, requiring Plaintiff to file a renewed Amended Complaint that includes the original exhibits would constitute "an unnecessary procedural hoop that would waste resources and delay resolution of this action." *Blalock v. Smith*, No. 15-CV-0045 (DNH/CFH), 2016 WL 11004718, at * 1 n.3 (N.D.N.Y. Aug. 24, 2016), *report and recommendation adopted*, No. 9:15-CV-45 (DNH/CFH), 2018 WL 1399339 (N.D.N.Y. Mar. 19, 2018). Accordingly, because Plaintiff is proceeding *pro se*, I recommend that the Court consider the exhibits attached to the original Complaint as incorporated by reference in the Amended Complaint. *See id.*

determine if the letter qualifies as [a notice under RESPA]." *Lopez v. Bayview Loan Servicing, LLC*, No. 16-CV-2610 (JPO), 2017 WL 3396421, at *8 (S.D.N.Y. Aug. 8, 2017) (internal quotation marks omitted). Under 12 U.S.C. § 2605(e), a borrower may submit a "qualified written request," (QWR) to a servicer, which triggers a servicer's obligation to take "[a]ction with respect to the inquiry" within 30 days of receipt of the QWR. 12 U.S.C. § 2605(e)(1)(B); 12 U.S.C. § 2605(e)(2). The servicer must also provide "a written response acknowledging receipt of the correspondence within 5 days." 12 U.S.C. § 2605(e)(1)(A). A QWR must include the name and account of the borrower, and "a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Finally, in addition to pleading a failure to act, Plaintiff must show "(1) 'actual damages to the borrower as a result of the failure' to comply with § 2605, or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of the statute." *Lopez v. Bayview Loan Servicing, LLC*, 2017 WL 3396421, at *8 (quoting 12 U.S.C. § 2605(f)). Moreover, "RESPA requires plausible factual allegations indicating that the harm [the plaintiff] suffered was proximately caused by specific problems with Defendants' QWR responses." *Bocci v. Nationstar Mortg. LLC*, No. 23-CV-1780 (JPC) (KHP), 2024 WL 4326932, at *7 (S.D.N.Y. Sept. 27, 2024).

Here, Plaintiff alleges that on November 30, 2023, he sent a letter to Defendant, which was delivered on December 4, 2023, notifying it of the ongoing dispute regarding his mortgage payment. ECF No. 12 at 3. In such letter, Plaintiff provided his name and account number and requested that Defendant investigate and remedy the pre-existing billing dispute. ECF No. 1 at 22; *see also* ECF No. 12 at 3. For purposes of this initial review, Plaintiff's letter satisfies the

requirements of 12 U.S.C. § 2605(e)(1)(B), and it is plausible that Plaintiff's letter constitutes a QWR.

Plaintiff alleges that after Defendant's acknowledgement letter was sent to Plaintiff, Defendant took no additional actions to resolve the billing dispute and foreclosure proceedings were initiated. *See* ECF No. 12 at 5-6. If true, this failure to act pursuant to 12 U.S.C. § 2605(e)(2) could give rise to a "fail[ure] to take timely action." 12 U.S.C. § 2605(k)(1)(c).

With respect to damages, Plaintiff alleges that he suffered damages, including credit damage, foreclosure related damages, out of pocket expenses and time, and emotional distress. ECF No. 12 at 6-7, 14. Plaintiff also asserts that he is entitled to statutory damages. *Id.* at 7. While the Court acknowledges that such allegations are somewhat conclusory in nature, *see Lopez v. Bayview Loan Servicing, LLC*, 2017 WL 3396421 at *8 (granting defendant's motion to dismiss plaintiff's RESPA claim because complaint stated in a conclusory fashion that defendant's violations caused plaintiff harm), the Court recommends that Plaintiff's claim be construed liberally and proceed to service of process.

### iii.    Plaintiff's Claim Pursuant to the FDCPA

Next, Plaintiff alleges a violation of the FDCPA. ECF No. 12 at 7-9. The FDCPA seeks to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits the "false representation of . . . the character, amount, or legal status of any debt," as well as "[c]ommunicating or threatening to communicate to any person

credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(2); 15 U.S.C. § 1692e(8).[2]

As was stated, *supra*, Plaintiff alleges that on December 7, 2023, Defendant received and acknowledged Plaintiff's written notice that a dispute regarding Plaintiff's mortgage payment remained unresolved. ECF No. 12 at 8. Plaintiff also avers that, despite such notice and acknowledgment, Defendant subsequently "communicated credit information regarding Plaintiff's mortgage loan to one or more consumer reporting companies, including information reflecting delinquency, default, or other adverse status." *Id.* Additionally, Plaintiff attached to his original Complaint evidence of a foreclosure proceeding that was commenced on May 6, 2024, as well as "Evidence of Defendant's Furnishing of Adverse Credit Information to Consumer Reporting Agencies," which is dated November 30, 2025. ECF No. 1 at 17, 30, 32-33. Accordingly, I recommend the Court permit Plaintiff's FDCPA claim proceed to service of process.

iv.    *Plaintiff's Claim Pursuant to the FCRA*

In Count Three, Plaintiff asserts a claim under the FCRA. ECF No. 12 at 9-10. The FCRA "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The FCRA also requires credit information furnishers to investigate disputes by consumers, and to report the investigation findings to consumer reporting agencies. 15 U.S.C. § 1681s-2(b)(1). The FCRA directs furnishers

---

[2] In *Townsend v. Quantum3 Grp., LLC*, 535 B.R. 415, 429 (M.D. Fla. 2015), the Court noted that "there is an irreconcilable conflict between the Bankruptcy Code and claims brought under the FDCPA premised on a creditor's failure to register as a consumer collection agency under state law," and, therefore, that particular type of claim brought under the FDCPA would be preempted by the Bankruptcy Code. This circumstance, however, does not pertain to Plaintiff's claim.

to modify, delete, or permanently block the reporting of inaccurate information discovered during the furnisher's investigation. 15 U.S.C. § 1681s-2(b)(1)(E).

Plaintiff alleges that Defendant violated the FCRA when it "furnished information regarding Plaintiff's mortgage account to one or more consumer reporting companies, including information reflecting delinquency, default, or other adverse status." ECF No. 12 at 9. Plaintiff asserts that "Defendant's furnishing of negative credit information" happened while "Defendant's investigation obligations remained outstanding." *Id.* at 4. Because Plaintiff has pled a plausible claim under the FCRA, I recommend that Plaintiff's Complaint proceed to service of process.

> v.    *Plaintiff's Request for a Declaratory Judgment*

In Count Four, Plaintiff requests a declaratory judgment of the respective rights and obligations of the parties under RESPA, the FDCPA, and the FCRA. ECF No. 12 at 11. The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. However, "[t]he purpose of the Act is to enable parties to adjudicate claims before either side suffers great damages." *In re Combustion Equip. Assoc.*, 838 F.2d 35, 37 (2d Cir. 1988). "Declaratory relief operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm." *Leniart v. Borchet*, No. 3:20CV1098 (KAD), 2020 WL 7353911, at *3 (D. Conn. Dec. 15, 2020) (*citing In re Combustion*, *supra*).

Thus, "declaratory judgment is inappropriate when past conduct is the focus of the allegation." *Country Home Prods., Inc. v. Schiller-Pfeiffer, Inc.*, 350 F. Supp. 2d 561, 566 (D. Vt. 2004). Additionally, "[c]ourts frequently find that a declaratory judgment will not serve a useful

purpose when the claim is duplicative of another claim in the same action." *Tang Cap. Partners, LP. v. BRC Inc.*, 661 F. Supp. 3d 48, 77 (S.D.N.Y. 2023).

Plaintiff's claims concern alleged past violations of federal law on the part of Defendant. Additionally, his request for a declaratory judgment is duplicative of Counts One, Two, and Three. Therefore, his request for a declaratory judgment is not plausible. As such, I recommend that the separate claim for declaratory relief be dismissed.

vi.     *Plaintiff's Negligence Claim*

In Count Five, Plaintiff asserts a negligence claim against Defendant. ECF No. 12 at 12-13. Negligence claims brought under Connecticut law require a showing that there was a "duty; breach of that duty; causation; and actual injury . . . ." *Jarmie v. Troncale*, 306 Conn. 578, 589 (2012). In determining whether a duty exists, the "threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." *Id.* at 590. In other words, the test for establishing a duty is "would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result." *Id.*

Plaintiff alleges that Defendant was negligent when it (1) failed to reasonably investigate Plaintiff's billing dispute, (2) continued to rely on disputed and unverified account information for servicing and enforcement actions, (3) initiated and maintained foreclosure-related activity without first resolving known servicing errors, and (4) furnished adverse credit information based on inaccurate, incomplete, or uninvestigated account data. ECF No. 12 at 13. Plaintiff asserts that "Defendant knew or should have known that its failure to exercise reasonable care in servicing and reporting would foreseeably cause harm to Plaintiff." *Id.* Moreover, Plaintiff alleges that "[a]s a

direct and proximate result of Defendant's negligence, Plaintiff suffered actual damages, including but not limited to: Damage to credit reputation and creditworthiness; Foreclosure-related costs and harms; Out of pocket expenses and lost time; and Emotional distress." *Id.* Because Plaintiff has pled a plausible claim of negligence, I recommend Plaintiff's claim be construed liberally and proceed to service of process.

> vii.     *Plaintiff's Claim Pursuant to the Connecticut Unfair Trade Practices Conn. Gen. Stat. § 42–110b(a) ("CUTPA")*

Finally, in Count Six, Plaintiff asserts a violation of CUTPA. ECF No. 12 at 13-14. "CUTPA prohibits 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' *See* Conn. Gen. Stat. § 42-110b." *Connecticut Fair Hous. Ctr. v. Corelogic Rental Prop. Sols.*, LLC, 369 F. Supp. 3d 362, 380 (D. Conn. 2019). "To prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . [and] (2) [they have] suffered an ascertainable loss of money or property as a result of the defendant's acts or practices." *Id.* (internal citation and quotation marks omitted). In considering the first element, namely, whether Defendant engaged in an unfair or deceptive act, the Court must consider "whether the act: (1) offends public policy as it has been established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers." *Id.* (internal quotation marks omitted).

Plaintiff alleges Defendant "was engaged in trade or commerce within the State of Connecticut, including the business of mortgage loan servicing and debt collection directed toward Connecticut consumers," and that Plaintiff is a consumer within the meaning of the statute. ECF No. 12 at 14. As to the first element of a CUTPA claim, Plaintiff alleges that Defendant "engaged

in unfair and deceptive acts and practices" by failing to conduct a reasonable investigation into the underlying mortgage dispute, continuing collection and servicing activities while such dispute was ongoing, furnishing negative credit information, initiating foreclosure proceedings, and transferring the mortgage loan while the ongoing dispute remained unresolved. *Id.* Plaintiff maintains that Defendant's conduct (1) offended public policy, (2) was immoral, unethical, oppressive, and unscrupulous, and (3) caused substantial injury to Plaintiff. *Id.* As to the second element of his CUTPA claim, Plaintiff states that he has suffered "credit damage, loss of opportunities, foreclosure-related harm, out-of-pocket expenses, [and] emotional distress." *Id.* Because Plaintiff has sufficiently pled a claim under CUTPA, I recommend that such claim proceeds to service of process.

### III.    Conclusion

For these reasons, I **RECOMMEND** the Court **GRANT** Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*, and I **RECOMMEND** that the Court allow all of Plaintiff's claims with the exception of Count Four (the claim for Declaratory Judgment) to proceed to service of process against Defendant.

This is a recommended ruling by a U.S. Magistrate Judge, to which Plaintiff may object under Rule 72 of the Federal Rules of Civil Procedure and Rule 72 of the Local Rules of Civil Procedure for the District of Connecticut.  Plaintiff must file any such objection by **April 21, 2026**. *See* Fed. R. Civ. P. 72(b)(2) (establishing that objections to recommended rulings must be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (adding five days for parties who, like Plaintiff, will receive notice of the recommended ruling by mail); Fed. R. Civ. P. 6(a)(1) (establishing that if a court-ordered time period ends on a Saturday, Sunday or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").  If Plaintiff

fails to file a timely objection, he may not thereafter assign as error a defect in my recommendation, *see* D. Conn. L. Civ. R. 72.2(a), or seek appellate review, *see Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

 SO ORDERED.

*/s/ Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge
